UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDDIE L. BRIDGES,

                                        Plaintiff,

            -vs-                                            13-CV-33C

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]

                                        Defendant.

_____

APPEARANCES:              KENNETH R. HILLER, ESQ.
                          Law Offices of Kenneth Hiller
                          Amherst, New York
                          Attorneys for Plaintiff

                          WILLIAM J. HOCHUL, JR.
                          United States Attorney, Western District of New York
                          (GAIL Y. MITCHELL, AUSA, of Counsel)
                          Buffalo, New York
                          Attorneys for Defendant

            This matter was transferred to the undersigned for all further proceedings, by order

of Chief United States District Judge William M. Skretny dated November 14, 2013 (Item

15).

            Plaintiff Eddie L. Bridges initiated this action pursuant to Section 405(g) of the Social

Security Act, 42 U.S.C. § 405(g), to review the final determination of the Commissioner of

Social Security (the "Commissioner") denying plaintiff's application for Supplemental

Security Income ("SSI") and Disability Insurance benefits ("DIB").  The Commissioner has

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.
Pursuant to Fed. R. Civ. P. 25(d), she is substituted for former Commissioner Astrue as defendant in this
case and no further action need be taken.  *See* 42 U.S.C. § 405(g).  In the interest of consistency, Colvin
will be referred to throughout this Decision as "Commissioner."

filed a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Item 9) and the plaintiff has filed a cross motion requesting the same relief (Item 10).  For the following reasons, the Commissioner's motion is granted and plaintiff's motion is denied.

## BACKGROUND

Plaintiff was born on October 24, 1953 (Tr. 82).[2]  He applied for SSI and DIB on April 21, 2009, alleging disability as of February 25, 2009 due to congestive heart failure and arthritis (Tr. 148).  Plaintiff's application was denied on August 11, 2009 (Tr. 85-89). Plaintiff then requested a hearing, which was held on November 5, 2010 before Administrative Law Judge ("ALJ") Nancy Gregg Pasiecznik (Tr. 41-80).  Plaintiff testified at the hearing and was represented by counsel.

By decision dated July 28, 2011, the ALJ found that plaintiff was not under a disability within the meaning of the Social Security Act (Tr. 15-33).  The ALJ's decision became the Commissioner's final determination when the Appeals Council denied plaintiff's request for review (Tr. 1-4).

Plaintiff then filed this action on January 9, 2013, pursuant to the judicial review provision of 42 U.S.C. § 405(g). On August 16, 2013, the Commissioner filed a motion for judgment on the pleadings arguing that the ALJ's decision was supported by substantial evidence (Item 9).  On August 19, 2013, the plaintiff cross-moved for the same relief, arguing that the ALJ erred in not finding him disabled (*see* Item 10).  Neither party filed a

---

[2]  References preceded by "Tr." are to page numbers of the administrative record, filed by defendant as part of the answer to the complaint (Item 6).

response to the motions.

## **DISCUSSION**

### I. Scope of Judicial Review

The Social Security Act states that upon district court review of the Commissioner's decision, "the findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ."  42 U.S.C. § 405(g).  Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-72 (2d Cir. 1999).  Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try a case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401.  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Winkelsas v. Apfel*, 2000 WL 575513, at *2 (W.D.N.Y. February 14, 2000).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1141 (E.D. Wis. 1976), *quoted in Gartmann v. Secretary of Health and Human Services*, 633 F. Supp. 671, 680 (E.D.N.Y. 1986).  The Commissioner's determination cannot be upheld when it is based

on an erroneous view of the law that improperly disregards highly probative evidence. *Tejada*, 167 F.3d at 773.


**II.  Standard for Determining Eligibility for Disability Benefits**

To be eligible for DIB and/or SSI under the Social Security Act, plaintiff must show that he or she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). The Regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. §§ 404.1520, 416.920.   First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that "significantly limits [the claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment is severe, the ALJ then determines whether it meets or equals the criteria of an impairment found in 20 C.F.R. Pt. 404, Subpart P, App. 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant is capable of performing his or her past

4

relevant work.  Finally, if the claimant is not capable of performing his or her past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing other work which exists in the national economy, considering the claimant's age, education, past work experience, and residual functional capacity.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Reyes v. Massanari*, 2002 WL 856459, at *3 (S.D.N.Y. April 2, 2002); 20 C.F.R. §§ 404.1520(g), 416.920(g).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant demonstrates an inability to perform past work, the burden shifts to the Commissioner to show that there exists other work that the claimant can perform. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).  The Commissioner ordinarily meets her burden at the fifth step by resorting to the medical vocational guidelines set forth at 20 C.F.R. Pt. 404, Subpart P, App. 2 (the "Grids").[3]  However, where the Grids fail to describe the full extent of a claimant's physical limitations, the ALJ must "introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which claimant can obtain and perform."  *Bapp v. Bowen*, 802 F.2d 601, 603 (2d Cir. 1986).

In this case, the ALJ found that plaintiff had not performed substantial gainful employment activity since October 24, 2008, the amended alleged onset date of disability (Tr. 20).  Upon review of plaintiff's medical records and hearing testimony, the ALJ found that plaintiff has severe impairments, including degenerative disc disease and hypertension.  He also suffers from impairments that do not result in significant work-

---

[3]The Grids were designed to codify guidelines for considering residual functional capacity in conjunction with age, education and work experience in determining whether the claimant can engage in substantial gainful work existing in the nation economy.  *See Rosa*, 168 F.3d at 78; *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 (S.D.N.Y. 1996).

related functional limitations, including trivial pulmonary insufficiency, trivial mitral valve regurgitation, trivial aortic insufficiency, and adjustment disorder with depressed mood. *Id.* The ALJ determined that none of plaintiff's impairments met the criteria in the Listings (Tr. 21). The ALJ then determined that plaintiff had the residual functional capacity ("RFC") to perform medium work and was able to perform his past relevant work as a hand packager, warehouse worker, dishwasher, and cook helper (Tr. 32). Based on these findings, the ALJ determined that plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of the decision (Tr. 33).

## III. The Medical Record

The medical records indicate that plaintiff went to the emergency room of Buffalo General Hospital on March 23, 2008 complaining of chest pain and shortness of breath. A stress test was positive for myocardial ischemia, while exercise capacity was normal for plaintiff's age and gender (Tr. 261, 352). Myocardial stress study was normal (Tr. 353-56). Plaintiff was discharged the following day (Tr. 432).

Plaintiff treated with Dr. Lester Sielski, an internist, from December 2008 to July 2010. Dr. Sielski noted a history of arthritis, shoulder pain, hypertension, and congestive heart failure (Tr. 364). An echocardiogram in May 2009 was essentially normal, with trivial mitral regurgitation, trivial aortic insufficiency, and trivial pulmonic insufficiency (Tr. 342).

Plaintiff underwent a consultative psychiatric evaluation by Dr. Thomas Ryan, Ph.D., on October 24, 2008 (Tr. 280-83). Dr. Ryan diagnosed adjustment disorder with depressed mood (Tr. 282). Cognitive functioning appeared to be average or low average.

6

*Id.* Plaintiff demonstrated no significant limitations in his ability to understand directions, perform simple tasks, maintain attention and concentration, maintain a regular schedule, and relate with others, but showed mild to moderate limitation in his ability to deal with stress. *Id.*

Plaintiff underwent a consultative internal medicine examination on October 24, 2008 with Dr. Jacob Piazza (Tr. 284-87).  Plaintiff's chief complaint was low back pain.  He also reported shoulder pain, hypertension, and occasional shortness of breath upon exertion (Tr. 284).  Dr. Piazza diagnosed chronic low back pain, osteoarthritis of the left shoulder, and hypertension (Tr. 286).  His examination of plaintiff's heart and lungs was normal (Tr. 285).  Dr. Piazza noted a mild limitation for bending and lifting and a mild to moderate limitation for use of the left upper extremity (Tr. 287).  He found no evidence of cardiac disease.  *Id.*  An x-ray of plaintiff's lumbosacral spine showed normal disc spaces and moderate osteophytes in the lower lumbar spine (Tr. 288).  Pulmonary function was normal (Tr. 289).

An x-ray of plaintiff's lumbar spine on April 16, 2009 showed minimal degenerative disc disease in the mid and lower lumbar spine (Tr. 348).  An MRI of plaintiff's lumbar spine on May 17, 2009 was normal (Tr. 322).

Plaintiff underwent an additional consultative internal medicine examination on April 23, 2009 with Dr. Samuel Balderman (Tr. 314-17).  Plaintiff's main complaint was left shoulder pain and a history of congestive heart failure (Tr. 314).  Dr. Balderman diagnosed hypertension and a "questionable history of congestive heart failure" (Tr. 316).  The examination was essentially normal with some limited mobility in the lumbar spine and left shoulder (Tr. 316).  Strength was 5/5 in all extremities. *Id.*  Dr. Balderman noted that

7

plaintiff's effort was "incomplete" and the limitation in plaintiff's range of movement in the left shoulder was, in his opinion, due to "symptom magnification." *Id.*  A left shoulder x-ray taken on April 28, 2009 was normal (Tr. 318).

Plaintiff was evaluated for lumbar strain by physical therapist Donna Gulick of Orthosports in August 2009 (Tr. 332).  He was later evaluated for shoulder pain at Orthosports in January 2010.  At that time, plaintiff was diagnosed with rotator cuff tendonitis and was to undergo physical therapy one to two times per week (Tr. 387).  An x-ray of his cervical spine in July 2010 revealed minor displacement at C3 - C7 and multilevel degenerative disc disease (Tr. 423).  No significant neural foraminal compromise was noted. *Id.*

## IV. Hearing Testimony

At the administrative hearing, plaintiff testified that he cannot work because of pain in his lower back and left shoulder (Tr. 56).  He can walk about three blocks and must rest to catch his breath after about a block and a half (Tr. 58-59).  Plaintiff must shift positions from standing to sitting every 10 to 15 minutes (Tr. 59-60).  Plaintiff spends most of his day lying or sitting (Tr. 60).  He is able to lift a gallon of milk with his left hand but cannot raise the arm to shoulder height (Tr. 62, 64).  Plaintiff stated that he has congestive heart failure and experiences chest pain upon exertion (Tr. 67).  Plaintiff takes Daypro, a non-steroidal anti-inflammatory drug, simvastatin for cholesterol, baclofen for muscle spasms, amitriptyline for depression, and diovan for hypertension (Tr. 67-68).  Plaintiff testified that the medications make him tired and he often naps for two to three hours during the day (Tr. 69).

8

Jay Steinbrenner, Vocational Expert ("VE"), testified that plaintiff's previous work as a hand packer, warehouse worker, dishwasher, and cook helper would be classified as unskilled work at a medium exertion level.  He further testified that a person of plaintiff's age and education who could lift, carry, push, and pull up to 50 pounds occasionally and 25 pounds frequently, with no overhead lifting, reaching, or repetitive pushing or pulling with the left arm, could do the hand packer, cook helper, or dishwasher jobs (Tr. 76).

## V.  The RFC Assessment

In support of his motion, plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence.  Specifically, plaintiff argues that the ALJ should have found his shoulder impairment to be a severe impairment.  Additionally, he argues that the ALJ failed to specify the weight afforded to any treating or examining source.  Plaintiff argues that his shoulder limitation results in an ability to do only light work and his inability to do previous work at a medium exertion level thus requires a finding of disability.

The ALJ carefully considered the medical evidence of a shoulder impairment.  There is no objective medical evidence of a shoulder injury.   Radiological studies were consistently normal.  The only evidence of plaintiff's shoulder pain is a demonstrated limitation in his range of motion in the consultative exams.  Dr. Piazza diagnosed osteoarthritis of the left shoulder, despite the fact that the shoulder x-ray was normal.  Dr. Balderman found plaintiff's effort in range of motion testing to be "incomplete" and opined that plaintiff was exaggerating his symptoms.  Plaintiff was able to elevate the left shoulder to 90 degrees and his strength was 5/5 in his upper extremities (Tr. 316). Plaintiff underwent physical therapy for his shoulder in 2010, but there is no evidence that his

shoulder pain significantly limited his ability to do basic work activities.  Accordingly, the ALJ did not err in finding that the shoulder pain was not a severe impairment.  *See Rosa v. Colvin,* 2013 WL 1292145, *8 (N.D.N.Y. Mar. 27, 2013) (determination that shoulder impairment was not severe was supported by substantial evidence where record reflected no medical evidence or opinions that shoulder pain caused more than minimal functional limitations and diagnostic tests revealed no abnormal findings).  Additionally, any claimed error at step two of the evaluation is harmless since the ALJ found other severe impairments and proceeded beyond step two of the sequential analysis. *Stanton v. Astrue*, 370 F. App'x 231, 233 n. 1 (2d Cir.  2010); *Kemp v. Comm'r of Soc. Sec.,* 2011 WL 3876526, at *8 (N.D.N.Y. Aug.11, 2011), *Report and Recommendation adopted by,* 2011 WL 3876419 (N.D.N.Y. Aug. 31, 2011).  Further, the ALJ's decision makes clear that she considered the combination of impairments and the combined effect of all symptoms in making the determination.  *See* Tr. 33; 42 U.S.C. § 423(d)(2)(B); 20 C.F.R. § 404.1523. The ALJ noted that, were she to credit plaintiff's allegations of shoulder pain and allow for limited use of the left upper extremity, plaintiff could nonetheless do his past relevant work as a cook helper, dishwasher, and hand packager (Tr. 33).

Additionally, plaintiff argues that the ALJ failed to specify the weight she afforded the opinions of any treating or examining source.  The regulations provide that the ALJ must evaluate the medical opinions of acceptable medical sources and give a treating source's opinion controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record.  *See* 20 C.F.R.§ 404.1527(c)(2).   All medical opinions are

evaluated based on a variety of factors, including the examining relationship, the length, nature, and extent of any treatment relationship, the supportability and consistency of the opinion, and the specialty of the medical source.  *See* 20 C.F.R. § 404.1527(c).

In this case, the plaintiff's treating sources are Dr. Sielski and the physical therapists at Orthosports.  A physical therapist is not considered an "acceptable medical source" for purposes of the treating physician rule.  *See* 20 C.F.R. §§ 404.1513(a),(d).   Plaintiff has not specified which of Dr. Sielski's medical opinions was rejected by the ALJ, presumably because Dr. Sielski did not render an opinion as to the nature and severity of plaintiff's impairments, prognosis, and physical limitations.  *See* 20 C.F.R. §404.1527(a)(2).  Dr. Sielski merely diagnosed shoulder pain, treated plaintiff with medication, and referred him to physical therapy.   The ALJ considered the entire medical record, rejected the diagnosis of osteoarthritis by Dr. Piazza as not supported by objective medical evidence, and largely relied on the opinion of Dr. Balderman, who found no shoulder impairment.   Dr. Balderman's opinion was carefully evaluated in accordance with the Regulations and, accordingly, the court finds no error in the ALJ's evaluation of the medical evidence.

## VI.  The ALJ's Credibility Assessment

Plaintiff further argues that the ALJ failed to properly assess his credibility.   Courts in the Second Circuit have determined a claimant's subjective complaints are an important element in disability claims and must be thoroughly considered.  If a claimant's testimony of pain and limitations is rejected or discounted, the ALJ must be explicit in the reasons for rejecting the testimony.  *See Brandon v. Bowen*, 666 F.Supp. 604, 609 (S.D.N.Y. 1987).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. *Brown v. Colvin,* 2013 WL 3384172, *8 (N.D.N.Y. July 8, 2013). A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. *See* 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; *Gernavage v. Shalala*, 882 F.Supp. 1413, 1419 (S.D.N.Y. 1995).

Having found that plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ nonetheless found that plaintiff's statements concerning the nature, extent, intensity, persistence and limiting effects of those symptoms were not credible (Tr. 31). Specifically, the ALJ found that plaintiff's reports of the duration of his impairments were inconsistent (Tr. 31-32). For example, in October 2008, plaintiff complained of shoulder pain that had started about one year earlier (Tr. 284). Six months later, he complained that he had been suffering from shoulder pain for three years (Tr. 314). In January 2010, he complained that he had shoulder pain for several months (Tr. 387). These inconsistencies in plaintiff's statements suggest that the plaintiff may not be entirely reliable.

Additionally, the ALJ noted that plaintiff admitted he received unemployment benefits in 2008 or 2009. "Courts in the Second Circuit have held that an ALJ may consider evidence that the claimant received unemployment benefits and/or certified that he was ready, willing, and able to work during the time period for which he claims disability benefits as adverse factors in the ALJ's credibility determination." *Felix v. Astrue*, 2012 WL 3043203, at *10 (E.D.N.Y. Jul. 24, 2012); *Kiley v. Astrue*, 2009 WL 1956173, at *10 (W.D.N.Y. Jul. 6, 2009) ("Moreover, during the period of time in which Plaintiff alleges she

was disabled, she collected unemployment insurance, and as a prerequisite to doing so she stated that she was ready, willing, and able to work. Therefore, Plaintiff's testimony was inconsistent and contrary to the substantial evidence in the record...."). Once plaintiff claimed unemployment benefits, thereby certifying he was ready, willing, and able to work, the ALJ could factor that into the credibility determination as it fundamentally conflicts with plaintiff's contention that he suffers from a disability and an inability to work. *Rosenthal v. Colvin,* 2014 WL 1219072 (W.D.N.Y. Mar. 24, 2014). Accordingly, the court finds the credibility determination is supported by substantial evidence, as the ALJ applied the proper legal standards in assessing the plaintiff's credibility and adequately specified her reasons for discrediting plaintiff's statements .

## VII.  The ALJ's Assessment of the Vocational Testimony

Plaintiff argues that, as the RFC was not supported by substantial evidence, the hypothetical based on this RFC and posed to the VE  was not complete and accurate. Consequently, he contends that the ALJ erred in relying on the VE's testimony based on this hypothetical.  As the court finds that the ALJ's assessment of plaintiff's RFC was supported by substantial evidence, the hypothetical was accurate and the ALJ did not err in relying on the VE's testimony based on that hypothetical.

## CONCLUSION

The Commissioner's determination that plaintiff is not disabled is supported by substantial evidence in the record.  The Commissioner's motion for judgment on the

pleadings (Item 9) is granted and the plaintiff's motion (Item 10) is denied.  The Clerk of

the Court is directed to close the case.

So ordered.

_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   May 28, 2014